**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Danielle Bell, | Court No. 18-cv-01027 (PAM/TNL) |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| Portfolio Recovery Associates, LLC, and Rodenburg LLP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**INTRODUCTION**

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. Danielle Bell ("Bell"), through her attorneys, brings this action to challenge the actions of Rodenburg LLP, ("Rodenburg") and Portfolio Recovery

Associates, LLC ("PRA") (collectively "Defendants"), with regard to attempts by Defendants to unlawfully and abusively collect a debt allegedly owed by Bell, and this conduct caused Bell damages.

3. Bell makes these allegations on information and belief, with the exception of those allegations that pertain to Bell, which Bell alleges on personal knowledge.

4. While many violations are described below with specificity, this First Amended Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants took place in Minnesota.

6. Any violations by Defendants was knowing, willful, and intentional, and did not maintain procedures reasonably adapted to avoid any such specific violation.

7. All violations alleged regarding the FDCPA are material violations of the FDCPA as these violations would limit the ability of a hypothetical least sophisticated debtor to make an intelligent choice as to the alleged debt and actions that should be taken to resolve the alleged debt.

8. Through this First Amended Complaint, Bell does not allege that any state court judgment was entered against anyone in error, and Bell does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692(k).

10. This action arises out of the Defendants' violations of the FDCPA.

11. Because the Defendants do business within the State of Minnesota, personal jurisdiction is established.

12. Venue is proper pursuant to 28 U.S.C. § 1391.

13. At all times relevant, the Defendants conducted business within the State of Minnesota and the violations alleged occurred in the State of Minnesota.

## PARTIES

14. Bell is a natural person who resides in the City of Cambridge, State of Minnesota.

15. Rodenburg is located in the City of Fargo, State of North Dakota.

16. PRA is located in the City of Norfolk, State of Virginia.

17. Bell is a natural person allegedly obligated to pay a debt, and is a consumer, as that term is defined by 15 U.S.C. § 1692a(3).

18. Defendants are persons who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and are each therefore a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

## *Respondeat Superior Liability*

19. The acts and omissions of the individual employees and agents of Defendants, and the other debt collectors employed as agents by PRA who interacted with Bell as described herein, were committed within the time and space limits of their agency relationship with their principal, PRA.

20. Rodenburg, at all times relevant herein, was an agent of PRA.

21. The acts and omissions by Rodenburg were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by PRA in collecting consumer debts.

22. By committing these acts and omissions against Bell, Rodenburg was motivated to benefit its principal, PRA.

23. PRA is liable for the acts and omissions of Rodenburg as Rodenburg was motivated to benefit its principal.

24. Particularly, PRA had notice of and knowledge of Bell's representation of counsel prior to serving Bell with the lawsuit mentioned herein.

25. PRA is therefore liable to Bell through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal and state law by its collection agents, including, but not limited to violations of the FDCPA in their attempts to collect this debt from Bell.

**FACTUAL ALLEGATIONS**

*The First Debt*

26. Sometime on or before June 13, 2017, Bell is alleged to have incurred certain financial obligations with Citibank, N.A.- The Home Depot in the amount of $801.02 (the "First Debt").

27. Subsequently, on or before June 13, 2017, PRA purchased or otherwise acquired the First Debt.

28. Subsequently, PRA hired Rodenburg to collect the First Debt from Bell.

29. Subsequently, Defendants initiated a lawsuit against Bell on the First Debt by serving her with a summons and complaint.

30. Defendants did not file a cost bond with the court administrator as required by Minn. Stat. § 549.18 prior to serving Bell with a summons and complaint on the First Debt.

31. Thereafter, Bell hired an attorney to defend her against the lawsuit on the First Debt.

32. Bell's attorney noticed his representation of Bell to Defendants through a letter dated June 29, 2017 (the "First Notice").

33. Defendants received the First Notice.

34. The First Notice stated that the attorney represented Bell in the above-captioned matter, Portfolio Recovery Associates, LLC vs. Danielle Bell.

35. Sometime thereafter, Defendants stipulated to dismiss the lawsuit on the First Debt with prejudice.

### *The Second Debt*

36. Sometime on or before September 26, 2017, Bell is alleged to have incurred certain financial obligations with Comenity Bank- Maurices in the amount of $650.48 (the "Second Debt").

37. Subsequently, on or before September 26, 2017, PRA purchased or otherwise acquired the Second Debt.

38. Subsequently, PRA hired Rodenburg to collect the Second Debt from Bell.

39. Subsequently, Defendants initiated a lawsuit against Bell on the Second Debt by serving her with a summons and complaint.

40. Defendants did not file a cost bond with the court administrator as required by Minn. Stat. § 549.18 prior to serving Bell with a summons and complaint on the Second Debt.

41. Thereafter, Bell hired an attorney to defend her against the lawsuit on the Second Debt.

42. Bell's attorney noticed his representation of Bell to Defendants through a letter dated October 12, 2017 (the "Second Notice").

43. Defendants received the Second Notice.

44. The Second Notice stated that the attorney "now represent[s] Ms. Bell in the above-captioned matter and *any and all other matters that come to your office regarding Ms. Bell*. Direct all future correspondence to me." (emphasis added).

45. The above-captioned matter in the Second Notice referred to Portfolio Recover Associates, LLC vs. Danielle Bell.

46. As a result of the Second Notice, Defendants knew that Bell was represented by an attorney for the Second Debt and any other matters in the future that Defendants had regarding Bell.

47. As a result of the Second Notice, Defendants knew that attorney's name, address, and telephone number so Defendants could communicate with that attorney for any other matters that came to their offices regarding Bell.

48. Sometime thereafter, Defendants stipulated to dismiss the lawsuit on the Second Debt with prejudice.

### *The Third Debt*

49. Sometime on or before March 22, 2018, Bell is alleged to have incurred certain financial obligations with Comenity Bank- Pottery Barn in the amount of $1,848.37 (the "Third Debt").

50. Subsequently, on or before March 22, 2018, PRA purchased or otherwise acquired the Third Debt.

51. Subsequently, PRA hired Rodenburg to collect the Third Debt from Bell.

52. Subsequently, Defendants initiated a lawsuit against Bell on the Third Debt by serving her with a summons and complaint.

53. Defendants did not file a cost bond with the court administrator as required by Minn. Stat. § 549.18 prior to serving Bell with a summons and complaint on the Third Debt.

54. Defendants communicated with Bell by serving her with a lawsuit on the Third Debt despite Defendants having notice that an attorney represented Bell in on a lawsuit involving the Second Debt and "any and all other matters that come to your office regarding Ms. Bell"

55. Defendants disregarded Bell's representation by an attorney and her requests to have Defendants communicate with her attorney going forward for any other debt collection matters and served Bell directly with a subsequent lawsuit anyway.

56. Bell was materially impacted, as she was now forced by Defendants to deal with a summons and complaint that she specifically hired an attorney to address for her.

57. Upon information and belief, Defendants served Bell directly instead of communicating with Bell's attorney in an effort to obtain a judgment against her without her attorney receiving notice of the summons an complaint from Defendants.

58. Defendants knew that Bell was represented by an attorney with regard to the subject debt and had knowledge of, or could readily ascertain that attorney's name and address, yet Defendants communicated with Bell through serving her with a summons and complaint on the Third Debt. Consequently, Defendants violated and 15 U.S.C. § 1692c(a)(2) and 15 U.S.C. § 1692b(6).

59. By disregarding Bell's representation by counsel and communicating with her by serving her directly with a lawsuit in an attempt to collect a debt, Defendants harassed Bell and left her feeling frightened and concerned that no matter what she did to protect herself from Defendants, Defendants would continue to come after her and harass her on alleged debts no matter what.

60. By communicating with a represented party and serving her with a summons and complaint on the Third Debt, Defendants engaged in conduct the natural consequence of which was to harass, oppress, or abuse any person in connection with the collection of a debt. Consequently, Defendants violated 15 U.S.C. § 1692d.

61. Bell felt frustrated and dismayed by the fact that despite her representation by counsel, Defendants unfairly attempted to circumvent her status as a represented party and communicate with her directly on an alleged debt.

62. Defendants refused to honor Bell's status as a represented party and such blatant disregard for her representation was unconscionable and purposefully designed to directly reach Bell without her attorney's involvement.

63. By communicating with a represented party and serving her with a summons and complaint on the Third Debt, Defendants used an unfair or unconscionable means to collect or attempt to collect a debt. Consequently, Defendants violated 15 U.S.C. § 1692f.

### *Defendants' Failure to Post Bond*

64. Minn. Stat. § 549.18 states in part:

    > When an action is begun in the district court by a plaintiff who . . . is a nonresident or a foreign corporation, . . . such plaintiff shall file a bond to the court administrator, before service of summons, . . . in the sum of at least $75, conditioned for the payment of all costs and disbursements that may be adjudged against the plaintiff.

65. PRA is not a resident of Minnesota.

66. By not being a resident of Minnesota, PRA is a "nonresident" as that terms is used in Minn. Stat. § 459.18.

67. Pursuant to Minn. Stat. § 549.18, PRA was required to file a bond to the court administrator before serving Bell with a summons and complaint.

68. However, prior to serving Bell with a summons and complaint for the First Debt, Second Debt, and Third Debt, Defendants did not file a bond to the court administrator as required by Minn. Stat. § 549.18.

69. Minn. Stat. § 549.19 states in part:

    > When any party shall commence an action without filing a bond, or fail to provide an additional bond when so required, the court, on motion of defendant, may order a stay of all proceedings in such action, or a dismissal thereof at the cost of the attorney

    commencing the same. When judgment is entered against any party who has given security as required, and the costs and disbursements adjudged against the party remain unpaid in whole or in part for ten days, such bond may be put in suit and prosecuted to final judgment.

70. The purpose of Minn. Stat. § 549.18 and Minn. Stat. § 549.19 is to protect Minnesota defendants from nonresident plaintiffs that initiate lawsuits against Minnesota defendants by supplying a bond for Minnesota defendants to have as a security for costs to be adjudged against nonresident plaintiffs.

71. By initiating a lawsuit through serving Bell with a summons and complaint before docketing an action with the district court and paying the required bond as a security for Bell, Defendants deprive Bell of her rights and protections proscribed by law.

72. Initiating a lawsuit against Bell prior to posting the cost bond required by Minn. Stat. § 549.18 materially influenced Bell's decision-making.

73. Particularly, Bell was now thrust into a lawsuit that she had to respond to in order to protect herself, but without the protection required by Minn. Stat. § 549.18.

74. Additionally, Bell was required to respond to a lawsuit sooner than she otherwise should have, as she was served prior to Defendants taking the steps required by Minn. Stat. § 549.18 of filing the matter and and posting a cost bond with the court administrator.

75. Defendants knew that Minn. Stat. § 549.18 required nonresident plaintiffs to file a cost bond with the court administrator before serving a summons and complaint upon Bell.

76. Defendants willfully chose to not file the bond with the court administrator and instead chose to serve Bell with the summons and complaint on the Third Debt first.

77. Even after serving Bell with a summons and complaint on the Third Debt, Defendants still failed to post the cost bond required by Minn. Stat. § 549.18.

78. Upon information and belief, it is a pattern and practice of Defendants to not file the cost bond required by Minn. Stat. § 549.18 with a court administrator before serving a Minnesota consumer with a summons and complaint.

79. Upon information and belief, in the vast majority of district court cases Defendants initiated against Minnesota consumers from January 1, 2017 to present, Defendants did not first file the bond required by Minn. Stat. § 549.18 before serving a Minnesota consumer with a summons and complaint.

80. Upon information and belief, Defendants serve thousands of summons and complaints upon Minnesota consumers every year without first posting the cost bond required by Minn. Stat. § 549.18.

81. Upon information and belief, Defendants have evaded paying hundreds of thousands of dollars (if not more) that are required by law to be posted by Defendants before they served Minnesota consumers.

82. Defendants' complete disregard for the law and failure to post a cost bond designed as a protection for Minnesota defendants and required by Minnesota law constitutes an abusive and oppressive attempt to collect a debt.

83. Defendant's pattern and practice as to Bell alone by failing to post a cost bond in three separate cases shows a clear disregard for the law as to Bell specifically and the protections she was supposed to be afforded by Defendants.

84. By serving Bell with a summons and complaint on the Third Debt before filing a bond to the court administrator as required by Minnesota law, Defendants engaged in conduct the natural consequence of which was to harass, oppress, or abuse Bell in connection with the collection of a debt. Consequently, Defendants violated 15 U.S.C. § 1692d.

85. Through three separate lawsuits that Defendants initiated upon Bell without first posting a cost bond, Defendants falsely and deceptively represented to Bell that Defendants could proceed with a suit against Bell without first affording her the protection mandated by Minn. Stat. § 549.18.

86. By serving Bell with a summons and complaint on the Third Debt before filing a bond to the court administrator as required by Minnesota law, Defendants used a false, deceptive, or misleading representation or means in connection with the collection of a debt.  Consequently, Defendants violated 15 U.S.C. §§ 1692e and 1692e(10).

87. By serving Bell with a summons and complaint on the Third Debt before filing a bond to the court administrator as required by Minnesota law, Defendants used a false representation of the legal status of a debt. Consequently, Defendants violated 15 U.S.C. § 1692e(2)(A).

88. By serving Bell with a summons and complaint on the Third Debt before filing a bond to the court administrator as required by Minnesota law, Defendants threatened to take an action that cannot legally be taken or is not intended to be taken. Consequently, Defendants violated 15 U.S.C. § 1692e(5).

89. Denying Bell her statutory right to a cost bond being posted by Defendants before Defendants served her with summonses and complaints and attempted to collect debts against her was unfair and unconscionable, as Bell was required to respond to those suits without Defendants providing a statutorily mandated protection of a cost bond.

90. By serving Bell with a summons and complaint on the Third Debt before filing a bond to the court administrator as required by Minnesota law, Defendants used an unfair or unconscionable means to collect or attempt to collect a debt. Consequently, Defendants violated 15 U.S.C. § 1692f.

*Damages*

91. Defendants infringed upon Bell's rights proscribed by Congress to not be subject to abusive, illegal and unfair debt collection practices.

92. Defendants infringed upon Bell's rights proscribed by Minnesota law and served her with a summons and complaint without providing the court administrator bond to act as a security for costs against PRA for Bell.

93. Defendants served Bell with a lawsuit before Defendants were allowed to serve Bell with a lawsuit according to Minn. Stat. § 549.18.

94. Defendants caused an invasion of Bell's privacy.

95. Defendants intimidated and harassed Bell by sidestepping her attorney to communicate with her about a lawsuit.

## STANDING

96. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendant;

    c. and is likely to be redressed by a favorable judicial decision.

    *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

97. In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

### *The "Injury in Fact" Prong*

98. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo. Id.*

99. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. In the present case, Defendants engaged in violative conduct under the FDCPA. Such conduct and attempts to collect a debt are an invasion of Plaintiff's privacy.

100. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. In the instant case, it was Plaintiff's personal privacy and peace that was invaded by Defendant's conduct. Plaintiff also suffered emotional distress and embarrassment. Defendants intimidated and harassed Plaintiff.

### *The "Traceable to the Conduct of Defendant" Prong*

101. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Defendant.

102. In the instant case, this prong is met simply by the fact that the the violative conduct contemplated in this Complaint was initiated and/or sent by Defendants directly, or by Defendant's agent at the direction of Defendant.

### *The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

103. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

104. In the present case, Plaintiff's Prayers for Relief include a request for statutory damages. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

105. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

106. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendants on the stated claims.

## COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

### 15 U.S.C. §§ 1692 *ET SEQ.*

107. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*

108. As a result of each and every violation of the FDCPA, Bell is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each Defendant.

### PRAYER FOR RELIEF

WHEREFORE, Bell prays that judgment be entered against Defendants, and Bell be awarded damages from Defendants, as follows:

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3).

### JURY DEMAND

109. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Bell is entitled to, and demands, a trial by jury.

**HYDE & SWIGART**

Date: May 8, 2018                By: /s/ Anthony Chester
                                              Anthony P. Chester (Bar No. 0396929)
                                              Robert L. Hyde (Bar No. 035109X)
                                              **HYDE & SWIGART**
                                              120 South 6th Street, Suite 2050
                                              Minneapolis, MN 55402
                                              Telephone:   (952) 225-5333
                                              Facsimile:    (800) 635-6425
                                              Email: tony@westcoastlitigation.com

                                              *Attorneys for Danielle Bell*